**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 10 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EVOX PRODUCTIONS, LLC, a Delaware limited liability company, | No.   22-35113 |
| Plaintiff-Appellant, | D.C. No. 3:16-cv-00057-JR |
| v. | MEMORANDUM* |
| CHROME DATA SOLUTIONS, LP, a Delaware company, | |
| Defendant-Appellee, | |
| and | |
| CHROME SYSTEMS, INC.; DOES, 1-10, | |
| Defendants. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted January 10, 2023
Pasadena, California

Before:  WATFORD, FRIEDLAND, and BENNETT, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiff-Appellant Evox Productions, LLC ("Evox") creates and licenses images of cars. Beginning in 2003 and ending after 2008, Defendant-Appellee Chrome Data Solutions, LP ("Chrome") licensed Evox's images and sublicensed them to third parties pursuant to a copyright agreement ("License Agreement") between Chrome and Evox. In 2016, Evox sued Chrome, alleging contributory and/or vicarious copyright infringement based on three Chrome sublicensees—iPublishers, Potratz, and Webnet—that Evox alleged were still displaying its photos despite expired license agreements.

Adopting in part the Findings and Recommendation of a magistrate judge, the district court granted summary judgment to Chrome. We have jurisdiction pursuant to 28 U.S.C. § 1291 and, reviewing the district court's order de novo, we affirm. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

1. Section 13.5 of the License Agreement, which states that "[n]o action, regardless of form, arising out of this Agreement may be brought by either Party more than two years after the cause of action arose," precludes Evox from bringing claims against Chrome for alleged infringement that occurred before January 14, 2014—two years before the filing of the Complaint.

California courts[1] will enforce an agreement to shorten a limitations period "provided it is reasonable." *Hambrecht & Quist Venture Partners v. Am. Med. Int'l., Inc.*, 46 Cal. Rptr. 2d 33, 43 (Ct. App. 1995). Although an older line of California cases holds that such agreements are disfavored and must be construed narrowly, *see Lewis v. Hopper*, 295 P.2d 93, 95 (Cal. Ct. App. 1956), later authority suggests *Lewis* no longer supplies the prevailing rule of construction. *See Zalkind v. Ceradyne, Inc.*, 124 Cal. Rptr. 3d 105, 118 (Ct. App. 2011) (rejecting *Lewis*); *see also Brisbane Lodging, L.P. v. Webcor Builders, Inc.*, 157 Cal. Rptr. 3d 467, 476 (Ct. App. 2013) ("California courts have overwhelmingly granted contracting parties substantial freedom to *shorten* an otherwise applicable statute of limitations, so long as the time allowed is reasonable."). Two years is a reasonable length of time for a limitations period. *Cf. Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) (applying California law and finding a 12-month limitation reasonable). The limitations period in the License Agreement is accordingly enforceable.

Evox argues that the parties did not clearly and explicitly agree to modify the limitations period for copyright infringement claims. But Evox and Chrome agreed to modify the limitations period for all claims "arising out of" the Licensing

---

[1] Evox and Chrome agree that this issue is governed by California law because the License Agreement so states.

Agreement. Copyright infringement based on breach of a license agreement requires that the copying be beyond the scope of the original license. *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1315–16 (Fed. Cir. 2005). Evox alleges here that Chrome knowingly permitted the three relevant sublicensees to display copyrighted material, accessed pursuant to the License Agreement, after the License Agreement and its corresponding extensions expired. Therefore, this copyright dispute "aris[es] out of" the License Agreement because its core question is whether Chrome's sublicensees used licensed material after their legal right to do so expired, a disputed issue here.[2]

Citing *Litton Financial Printing Division v. NLRB*, 501 U.S. 190 (1991), Evox also argues that an expired contract releases parties from all obligations. But *Litton* does not and could not hold that breaches of contractual obligations are somehow expunged because a contract has expired. Because the copyright infringement Evox alleges is public display of images Chrome and its sublicensees lawfully acquired under the License Agreement, Chrome's obligation not to exceed the scope of the Agreement is an obligation "already fixed under the contract." *Litton*, 501 U.S. at 206.

---

[2] Affirming the district court's finding that this suit arises under the License Agreement does not extend the terms of the Agreement into perpetuity. Only disputes that genuinely put the scope of the License Agreement at issue could reasonably be said to arise out of such an agreement.

2. Even viewing all evidence in the light most favorable to Evox, there is insufficient evidence of infringement by Potratz within the limitations period. Under the Copyright Act, the owner of a copyright has the exclusive right to display its work publicly. 17 U.S.C. § 106(5); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017). Public display copyright infringement "does not require proof that the protected work was actually viewed by anyone. Rather, the [Copyright] Act defines 'publicly' to merely require that the display be at 'a place *open* to the public,' . . . readily encompassing any publicly accessible server." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1074 (9th Cir. 2021) (quoting 17 U.S.C. § 101). Therefore, Evox need only show that the protected works were stored on a "publicly accessible server" to show evidence of infringement. *Id.*

Evox's evidence of infringement by Potratz is insufficient. The evidence before the district court included: (1) emails between Chrome and Potratz regarding when Chrome could cut off Potratz's access to the Evox image library, (2) a declaration from Barry Thompson, and (3) a declaration from Michael Del Monte with two letter attachments.[3] None of this evidence establishes that Potratz

---

[3] Chrome argues that the Thompson and Del Monte declarations are inadmissible under the Best Evidence Rule. Fed. R. Evid. 1002. Because we hold that Evox's evidence is insufficient even considering those declarations, we decline to reach the issue of their admissibility.

was storing Evox images on a publicly accessible server after January 14, 2014. While the emails between Chrome and Potratz suggest Potratz still had access to Evox images until April 2014, they do not establish that Potratz displayed the images. Similarly, while the Thompson Declaration asserts that Thompson "found EVOX's copyrighted photographs publicly displayed on the Potratz Partners' website," on a date "[a]s late as 2015," it does not contain any information regarding which images were displayed, the URL where the images were located, or even when in 2015 Thompson's searches were performed.

Finally, the Del Monte Declaration and its letter attachments do not establish any infringing display by Potratz within the relevant time period. The Declaration itself states only that in "2015," Del Monte "did a quick search of a Potratz Partners server and was able to find that the Potratz server was still hosting a large number of EVOX photographs. . . . 204,259 EVOX images were still hosted on a Potratz Partners website and still could be accessed over the internet." But as with the Thompson Declaration, there is no information regarding which images were displayed, when they were displayed, or even the addresses at which they were supposedly located. Indeed, the declaration does not specify how Del Monte knew that the images he found were Evox's copyrighted images at all. The two exhibits Del Monte incorporated into his declaration—a 2013 summary (describing matters outside the limitations period), and a 2015 summary, which even if acceptable

evidence, was relevant only to WebNet—do not support claims that *Potratz* infringed Evox's copyright after January 2014.

3. Evox's evidence of infringement by iPublishers after January 14, 2014, is also insufficient. Evox argues that sufficient evidence of infringement exists in the form of emails between Chrome and iPublishers sent between March 2013 and July 2014, suggesting that Chrome did not "turn off" iPublishers' access to Evox images until July 2014. But the district court was correct that "[t]he email chain between Defendant and iPublishers on which Plaintiff relies only demonstrates that iPublishers had access to Defendant's server that contained the Plaintiff's photographs. It does not constitute evidence that iPublishers publicly displayed the photographs."

4. As the district court correctly held, Evox granted Webnet an implied sublicense to use its images until November 2014.[4] While a reasonable jury could find there were no *express* sublicense agreements between Evox and Chrome after 2011, we agree that Evox granted Chrome "an implied license by not objecting to [Chrome's] reports of its active sublicensees and accepting royalty payments for those sublicenses." "[G]rants of nonexclusive copyright licenses need not be in writing," *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir.

---

[4] Contrary to Evox's argument, Chrome adequately pleaded implied license in its Answer.

2001), and can "be implied from conduct," *Worldwide Church of God v. Phila.*
*Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000). "[C]onsent given in the
form of mere permission or lack of objection is also equivalent to a nonexclusive
license and is not required to be in writing." *I.A.E., Inc. v. Shaver*, 74 F.3d 768,
775 (7th Cir. 1996); *see also Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–
55 (9th Cir. 2008) (quoting *I.A.E.,* 74 F.3d at 776). The record establishes that
until November 2014, Chrome paid Evox for the Webnet sublicense, and Evox
never objected. Webnet therefore had an implied license to use Evox images until
November 2014.

Even assuming that Webnet publicly displayed Evox images after November
2014, Evox has submitted no evidence of secondary infringement during the
relevant time period. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing
or encouraging direct infringement, and infringes vicariously by profiting from
direct infringement while declining to exercise a right to stop or limit it." (internal
citations omitted)). As the district court found, "there is no evidence that [Chrome]
knew of, induced, or encouraged Webnet's purported direct copyright infringement
during the relevant time period." Evox argues that "the emails used as exhibits
throughout this case have shown that Chrome had many discussions with its
sublicensees in which it wrongfully authorized and enabled their access to and use

of EVOX images."  But Evox never identifies any emails that establish that Chrome encouraged or enabled Webnet to display Evox images after its sublicense contract expired, even viewing the record in the light most favorable to Evox.

**AFFIRMED.**